THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

LAKE ARMSTRONG LLC, et al.,

CASE NO. C09-0250-JCC

10

Plaintiffs,

ORDER

11

v.

12

SNOHOMISH COUNTY,

13

Defendant.

14

and v.

15

FRIENDS OF LAKE ARMSTRONG
WATERSHED ASSOCIATION,

16

17

Intervenor Defendant.

18

19

20

21

22

This matter comes before the Court on the parties' cross-motions for summary judgment
(Dkt. Nos. 38, 42). Having thoroughly considered the parties' briefing and the relevant record,
the Court finds oral argument unnecessary and hereby grants Defendant Snohomish County's
motion for the reasons explained herein.

23

**I.      BACKGROUND**

24

25

26

This case arises out of a dispute over a proposed development in rural Snohomish
County. Plaintiffs Lake Armstrong LLC, Noah Israel, and Kay Crabtree sought approval for a
subdivision on 80 acres near Lake Armstrong. They submitted an application for the

1    development to the Snohomish County Department of Planning and Development Services

2    ("PDS") on June 19, 2006. (Dkt. No. 42-3 at 3.) PDS began its review of the application as of

3    that date but deemed the application insufficient for further review on August 14, 2006. (*Id.*)

4    Plaintiffs resubmitted the application three times over the course of the following seven months,

5    and each time PDS found the application insufficient within weeks. (*Id.*) Plaintiffs again

6    resubmitted the application on May 23, 2007, and on June 11, 2007, PDS issued a Mitigated

7    Determination of Non-Significance ("MDNS")—a threshold assessment that the proposed

8    development would not have significant adverse environmental impacts. (*Id.*; Dkt. No. 40 at 4.)

9         Two weeks later, on June 25, 2007, owners of property near the proposed development

10   appealed the MDNS under the State Environmental Policy Act ("SEPA"), RCW 43.21C.[1] (Dkt.

11   No. 42-5.) The County Hearing Examiner held a combined hearing on the underlying application

12   and the SEPA appeal, with eight hearing dates between late November 2007 and late April 2008.

13   (Dkt. No. 32-1 at 3; Dkt. No. 40 at 5.) On September 17, 2008, the Hearing Examiner granted the

14   SEPA appeal and denied Plaintiffs' application. (Dkt. No. 32-1 at 4; Dkt. No. 40 at 5.) Plaintiffs

15   moved for reconsideration, and the Hearing Examiner issued a decision on November 6, 2008

16   that was slightly modified but arrived at the same result as the September 17 decision. (Dkt. No.

17   42-4.) Plaintiffs appealed the decision to the Snohomish County Council, which affirmed the

18   Hearing Examiner's decision on January 7, 2009. (Dkt. No. 39 at 69-70.)

19        Plaintiffs initiated review of the County's decision on January 28, 2009 by filing a

20   complaint against the County under the Land Use Petition Act ("LUPA"), RCW 36.70C, in

21   Skagit County Superior Court. The complaint also included a claim under the "Appearance of

22   Fairness" statute, RCW 42.56, and claims for damages under 42 U.S.C. § 1983 and RCW 64.40.

23   (Dkt. No. 32-1 at 1-2.) The parties agreed to bifurcate the LUPA and Appearance of Fairness

24   claims from the damages claims, and the County thereafter removed the damages claims,

25   _____

26        [1] The SEPA appellants later coalesced into the group Friends of Lake Armstrong
     Watershed Association, Intervenor Defendant herein.

1    initiating the instant action. This Court stayed the removed matter at the parties' request so that

2    the state court action could be resolved first. (Dkt. Nos. 7, 10.)

3          The County moved to dismiss the state court action in October 2010 on two general

4    grounds, and Plaintiffs did not oppose the motion. (Dkt. No. 28, Ex. A.) The Superior Court

5    granted the motion and dismissed the complaint with prejudice. (*Id.*, Ex. B.) This Court lifted the

6    stay on Plaintiffs' unopposed motion, and both parties now move for summary judgment.

7    **II.    DISCUSSION**

8          Summary judgment is proper "if the movant shows that there is no genuine issue as to

9    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

10   56(a). The Court must view all evidence in the light most favorable to the nonmoving party and

11   draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

12   242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for

13   a reasonable fact finder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the

14   evidence presents a sufficient disagreement to require submission to a jury or whether it is so

15   one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

16   **A.  Section 1983**

17         Plaintiffs' Amended Complaint first prays for damages under 42 U.S.C. § 1983 for

18   alleged violations of Plaintiffs' constitutional rights. (Dkt. No. 32-1 at 6-7.) To prevail in a

19   § 1983 action, plaintiffs must show (1) acts by a defendant (2) under color of state law (3)

20   depriving them of federal rights, privileges, or immunities, and (4) causing them damage.

21   *Shoshone–Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994).

22   Local governments may not be held liable on a *respondeat superior* theory under § 1983. Rather,

23   a plaintiff must show that the implementation of the local government's policies or established

24   customs inflicted the constitutional injury. *Monell v. N.Y. City Dep't of Soc. Services*, 436 U.S.

25   658, 708, 98 S. Ct. 2018 (1978). Local governments may also be held liable under § 1983 when

26   "the individual who committed the constitutional tort was an official with final policy-making

1  authority" or when such an official "ratified a subordinate's unconstitutional decision or action

2  and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

3       Plaintiffs appear somewhat at odds with themselves as to the basis for their claim of

4  municipal liability against Snohomish County. Their Amended Complaint alleges that

5  "Snohomish County has a de facto policy and/or custom of not following the timeliness

6  provisions relating to project permits." (Dkt. No. 32-1 at 7.) In response to the County's motion,

7  however, Plaintiffs allege that the Hearing Examiner unreasonably *deviated* from the normal

8  procedures of her office in rendering her decision. (Dkt. No. 48 at 18.) Plaintiffs then attempt to

9  merge the two arguments in stating, "the [Hearing Examiner] bears the responsibility for

10 establishing a new policy for disregarding the 120-day deadline for issuing a notice of a final

11 decision, and for dispensing with the previously existing 15-day time limit for the [Hearing

12 Examiner] to render a decision." (*Id.* at 20.) This ambiguity notwithstanding, the Court is

13 satisfied that Plaintiffs have shown that the County Council—an entity with final policymaking

14 authority—ratified the actions of the Hearing Examiner in affirming her decision. Plaintiffs

15 therefore have advanced an adequate basis for municipal liability against the County.

16      The issue then becomes whether there is a genuine issue of material fact as to Plaintiffs'

17 claim that the County deprived them of their constitutional rights. The Court concludes that there

18 is not, because the lawfulness of the County's actions in denying the Plaintiffs' application was

19 litigated to finality in the state court action. Federal courts must give a state court judgment the

20 same preclusive effect it would be given under the law of the state in which it was rendered. 28

21 U.S.C. § 1738; *Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850 (9th Cir. 1986). This is the case

22 even for § 1983 cases and for administrative adjudications reviewed by state courts. *Caldeira v.*

23 *County of Kauai*, 866 F.2d 1175, 1177 (9th Cir. 1989). Under Washington law, a party asserting

24 issue preclusion, or collateral estoppel, must establish that:

25      (1) the issue decided in the earlier proceeding was identical to the issue presented
        in the later proceeding, (2) the earlier proceeding ended in a judgment on the
26      merits, (3) the party against whom collateral estoppel is asserted was a party to, or

ORDER
PAGE - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wash. 2d 299, 307, 96 P.3d 957 (2004). The ultimate question is whether the party to be estopped had a full and fair opportunity to litigate the issue. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash. 2d 255, 262, 956 P.2d 312 (1998).

The above requirements are met here. Plaintiffs' original state court complaint confirms the identity of issues presented in both proceedings. In support of their LUPA claim, Plaintiffs alleged that "the Hearing Examiner's untimely proceedings and untimely denial of Petitioners' preliminary plat application constituted unlawful procedure that did not follow the process prescribed by applicable ordinances and statutes." (Dkt. No. 1 at 10.) They further alleged that "the land use decision at issue and the procedures of the proceedings underlying the decision . . . were outside the authority of the Hearing Examiner making the decision because the decision was not issued within the time limitations imposed by statute and ordinance." (*Id.* at 11.) Likewise, in support of their § 1983 claim—both in the unbifurcated state court complaint and the Amended Complaint here—Plaintiffs allege that the County had a constitutional obligation to adjudicate applications and appeals in a timely manner, but that the County "has a de facto policy and/or custom of not following the timeliness provisions relating to project permits." (*Id.*; Dkt. No. 32-1 at 7.) Plaintiffs clarify in opposing summary judgment that their federal claim "arise[s] out of the unreasonable delays caused by the [Hearing Examiner's] blatant refusal to comply with the adopted development regulations codified in the Snohomish County Code." (Dkt. No. 48 at 18.) Thus, the timeliness of the Hearing Examiner's decision, and her compliance with statutes and code, are at the heart of both the LUPA claim and the § 1983 claim.

The remaining elements are plainly satisfied here. The state court action ended in a judgment on the merits in the County's favor—the County moved to dismiss the action on two grounds, and the court granted the motion, dismissing the LUPA claim with prejudice. (Dkt. No. 28 at 20.) That Plaintiffs, for whatever reason, elected not to file a response to the County's motion is immaterial. They had a full and fair opportunity to litigate the issues underpinning the

ORDER
PAGE - 5

1   LUPA claim before it was dismissed. Finally, given that Plaintiffs raised the issue of the Hearing

2   Examiner's conduct before the state court, this Court sees no basis for concluding that the

3   application of collateral estoppel would work an injustice here.

4          With all four elements satisfied, Plaintiffs cannot relitigate the issue of the timeliness of

5   the Hearing Examiner's decision or her compliance with statutes or county code governing time

6   limitations for issuing decisions. *See, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir.

7   2005) (invoking collateral estoppel in concluding that property owners' previous, unsuccessful

8   state court declaratory judgment action precluded due process claim under § 1983). The Court

9   reaches this conclusion notwithstanding *Muffett v. City of Yakima*, 2011 WL 5417158 (E.D.

10  Wash. 2011), to which both parties cite. In that case, the court held that the failure to file a timely

11  LUPA petition does not mandate summary judgment on a plaintiff's § 1983 claim for denial of

12  substantive due process. *Id.* at *5. According to the court, "to hold that failure to meet the LUPA

13  deadline could bar a § 1983 claim would impose an exhaustion requirement on § 1983," contrary

14  to established law. *Id.* at *4. Here, unlike in *Muffett*, Plaintiffs actually filed their LUPA petition,

15  which was denied. Ruling that Plaintiffs' § 1983 claim likewise fails does not impose an

16  exhaustion requirement, but rather recognizes that in this instance, the state court judgment in the

17  County's favor must be given preclusive effect.

18         The Court therefore grants the County's motion for summary judgment on Plaintiff's

19  § 1983 claim.

20  **B.  RCW 64.40**

21         The same result must obtain for Plaintiffs' claim under RCW 64.40. That statute provides

22  for an action for damages for property owners "to obtain relief from acts of an agency which are

23  arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within

24  time limits established by law." RCW 64.40.020. LUPA, however, is the exclusive means of

25  obtaining judicial review of land use decisions. RCW 36.70C.030(1). Although LUPA does not

26  bar actions for monetary damages, Washington courts have been clear that "claims for damages

1    based on a LUPA claim must be dismissed if the LUPA claim fails." *Mercer Island Citizens for*

2    *Fair Process v. Tent City 4*, 156 Wash. App. 393, 405, 232 P.3d 1163 (2010); *see also Asche v.*

3    *Bloomquist*, 132 Wash. App. 784, 133 P.3d 475 (2006) (concluding that nuisance claim for

4    damages that depended entirely on validity of LUPA claim was barred where plaintiffs did not

5    file LUPA claim). As the *Muffett* court observed, "a cause of action under RCW 64.40.020

6    necessarily relies on the validity of the land use decision." 2011 WL 5417158 at *4.

7          The above authority forecloses relief here. There can be little question that Plaintiffs'

8    claim under RCW 64.40 is based on their LUPA claim. The Amended Complaint seeks relief

9    under RCW 64.40 due to the County's allegedly "arbitrary and capricious customs and policies

10   relating to the failure to follow . . . state law and county ordinances relating to timely processing

11   and deciding Master Applications." (Dkt. No. 32-1 at 7.) Thus, the same allegations underlie

12   both the LUPA claim and the claim under RCW 64.40. The LUPA claim failed in state court,

13   and Plaintiffs' claim under RCW 64.40 therefore must fail here. It stands to reason that Plaintiffs

14   may not seek damages for unlawful County action when there has been no determination, under

15   the statute that is the exclusive means for reviewing land use decisions, that the County acted

16   unlawfully.

17         Alternatively, the claim under RCW 64.40 fails for the same reason that the § 1983 claim

18   fails: all the requirements under Washington law for collateral estoppel are met, and this Court

19   must give preclusive effect to the decision of the Skagit County Superior Court. Summary

20   judgment in favor of the County is therefore proper.

21   **III.    CONCLUSION**

22         For the foregoing reasons, Defendant Snohomish County's motion for summary

23   judgment (Dkt. No. 38) is GRANTED. Plaintiffs' motion for summary judgment (Dkt. No. 42) is

24   DENIED. Plaintiffs' claims against the County are DISMISSED with prejudice.

25   //

26   //

ORDER
PAGE - 7

1    DATED this 22nd day of August 2012.

2

3

4 _____

5                John C. Coughenour
                 UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 8